# UNITED STATES DISTRICT COURT
## District of Kansas
(Kansas City Docket)

CLINT A. LORANCE,

  Petitioner,

v.           CASE NO. __19-cv-3232-JWL__

COMMANDANT,
United States Disciplinary Barracks,
Ft. Leavenworth, Kansas,

  Respondent.

## RESPONDENT'S REPLY

APPEARS NOW the Respondent, Commandant, Colonel Caroline Horton, by and through Jared S. Maag, Assistant United States Attorney, and submits the following Reply to Petitioner's Response (Doc. 13) to Respondent's Motion to Dismiss (Doc. 10.)

Petitioner maintains that his recent Pardon by the President of the United States did not erase his convictions; thus, the present § 2241 appeal remains ripe for consideration given the "ineradicable stigma and dishonor and substantial deprivations" that remain. (Doc. 13, Pet. Resp. at 1-2.) For the following

1

reasons, this Court must dismiss the instant appeal.

To the extent that Petitioner still suffers the "ineradicable stigma" of a court-martial conviction, Respondent is constrained to agree that a presidential pardon is merely a sign of forgiveness and does not effectively expunge Petitioner's convictions; nor does the pardon demonstrate any level of innocence. *See, e.g., Bjerkan v. United States*, 529 F.2d 125, 126-27 (7th Cir. 1975) (noting that a pardon does not erase the basic fact of conviction, nor can it wipe away the social stigma that a conviction inflicts but nevertheless does away with the "collateral consequences" of his conviction); *In re North*, 62 F.3d 1434 1437 (D.C. Cir. 1994) (noting that pardon "does not blot out guilt or expunge a judgment of conviction"); *Nixon v. United States*, 506 224, 223 (1993) ("a pardon is in no sense an overturning of a judgment of conviction by some other tribunal"); *Burdick v. United States*, 236 U.S. 79, 94 (1915) (a pardon "carries an imputation of guilt").  However, a presidential pardon *does* restore Petitioner's basic civil rights and further prevents the government from prosecuting Petitioner again for the offenses for which he was convicted. *Nixon*, 506 U.S. at 232 (pardon precludes future punishment for the conviction).

Nevertheless, Petitioner's continued challenge to his conviction seemingly runs counter to the purpose and impact of a pardon which, again, carries with it

the understanding that a "confession of guilt [is] implied in the acceptance of a pardon." *Burdick*, 236 U.S. at 91. Indeed, an individual is acquitted on the ground of actual innocence; yet, he is pardoned through favor. *United States v. Noonan*, 906 F.2d 952, 958 (3d Cir. 1990) (citing *Cook v. Freeholders of Middlesex*, 2 Dutch. (N.J.) 326, 331, 333 (1857)); *cf. Biddle v. Perovich*, 274 U.S. 480, 486, 47 S.Ct. 664, 71 L.Ed. 1161 (1927) ("When granted [, a pardon] is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed."). To that end, the government submits that Petitioner's decision to aggressively seek and ultimately accept a full and unconditional pardon from the President demonstrates an unmistakable concession of guilt on his part. To now turn around and challenge the crimes of conviction while at the same time accepting the President's act of grace runs afoul of what the Supreme Court plainly understood in *Burdick*, namely, that a transgressor of the law may in fact reject the pardon and remain bound to the process which will define his guilt, or he can accept the pardon, avoid punishment, with the understanding that such acceptance of the pardon implies guilt. 236 U.S. at 90-92. It is Petitioner's acceptance of the Presidential Pardon that arguably moots the merits of this case

and remains an additional ground upon which to dismiss his appeal.[1]   Indeed, Petitioner himself agrees that a "presidential pardon is a recognition of guilt" and "does not imply innocence."   (Doc. 13, Pet. Resp. at 1, 3.)

Notwithstanding Petitioner's apparent concession on the issue of guilt in relation to the Pardon—and whether there is some continuing dispute over the merits and viability of Petitioner's challenge to his convictions—there still remains the equally relevant question of who the proper Respondent / custodian is in the wake of Petitioner's release from the United States Disciplinary Barracks at Fort Leavenworth.   Petitioner maintains that this Court retains subject matter jurisdiction because he was in custody when he filed his § 2241 motion and his recent release pursuant to the Presidential Pardon has no consequential impact on this Court's ability to hear the case to its conclusion.  (Doc. 13, Pet. Resp. at 7.)   Similarly, Petitioner argues that personal jurisdiction over Colonel Horton should continue even though Colonel Horton, as the presently named Respondent, has no ability or authority to actually or

---

[1] *See also*, https://www.justice.gov/pardon/frequently-asked-questions (While it does not signify innocence, "[a] pardon is an expression of the President's forgiveness and ordinarily is granted in recognition of the applicant's acceptance of responsibility for the crime and established good conduct for a significant period of time after conviction or completion of sentence.") (Last visited 12.16.2019).

theoretically "produce the body."[2] Petitioner's argument that Colonel Horton is the proper Respondent is simply unsustainable.

To be sure, Petitioner cannot contest the fact that Colonel Horton no longer exercises legal control over him. Accordingly, she is not the "immediate custodian" over Petitioner. *Monk v. Sec. of Navy*, 793 F.2d 364, 369 (D.C. Cir. 1986) ("We hold that for purposes of the federal habeas corpus statute, jurisdiction is proper *only* in the district in which the immediate, not the ultimate, custodian is located.") (emphasis supplied); *cf. Bishop v. Wynne*, 478 F.Supp.2d 1, 4-5 (D.D.C. 2006) (dismissing case without prejudice to allow petitioner to file where his immediate custodian was located); *see also Moultrie v. Sec. of the Army*, 723 F.Supp.2d 1230, 1234 (C.D. Cal. 2010) (federal habeas statute is straightforward that the proper respondent is the person who has custody over the petitioner).

In short, "when custody takes a form *other than physical detention* . . . it is necessary to identify as a 'custodian' someone who asserts the legal right to control that is being contested in the litigation." *Al-Marri v. Rumsfeld*, 360 F.3d

---

[2] "A century-old line of Supreme Court precedent has defined a habeas petitioner's custodian as the person 'who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge.'" *Kholyavskiy v. Achim*, 443 F.3d 946, 949 (7th Cir. 2006) (quoting *Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 494-95 (1973)) (internal citations omitted).

707, 711 (7th Cir. 2004) (emphasis supplied).   Again, Colonel Horton no longer has a legal right to control Petitioner and she has absolutely no role in the litigation as it stands today.   Moreover, Petitioner has a "total lack of formal contact" between himself and the United States Disciplinary Barracks, and a custodian "may not be deemed present wherever the serviceman has persuaded the service to let him go."   *Strait v. Laird*, 406 U.S. 341, 344 (1972).

The case of *Blackmon v. England*, 323 F.Supp.2d 1 (D.D.C. 2004) proves instructive under the present circumstances.   There, a Lieutenant Commander in the United States Naval Reserve sought to challenge his deployment order and filed for a writ of habeas corpus attempting to restrain the Secretary of the Navy from deploying him to Afghanistan.   *Id*. at 1.   The Court held that the Secretary of the Navy was not the proper respondent and dismissed the matter finding that "Petitioner was deployed into active duty by the Commander of Navy Personnel Command in Tennessee and is currently stationed at Fort Benning, Georgia, under the administrative command of the Naval Reserve Center in Columbus, Georgia."   *Id*. at 7.   In reaching its decision, the Court wrestled with the question of where jurisdiction lies when a petitioner falls outside the traditional custodial status.   *Id*. at 3.   Relying in large part on its previous decision in *Eisel v. Sec. of the Army*, 477 F.2d 1251 (D.D.C. 1973), the

Court agreed that service secretaries are far too remote to be named as a respondent for those petitioners outside of physical confinement, 323 F.Supp.2d at 5, while at the same time recognizing, per *Eisel*, that a proper respondent could be dependent on petitioner's present domicile and the "ranking military officer who could be found in that forum jurisdiction."  *Id*. at 5.

The case of *Copley v. Keohane*, 150 F.3d 827 (8th Cir. 1998), is arguably more relevant.  There, Copley—not unlike Petitioner here—named only one respondent,[3] the warden (Keohane) who was subject to the Court's jurisdiction when the habeas petition was filed.  *Id*. at 830.  After Copley was released from physical custody and placed under the supervision of the federal probation office in Louisiana, the Court recognized that "Copley [was] not in the custody of anyone over whom we have jurisdiction, so there is no entity that we can order to effect Copley's release should the writ issue."  *Id*. at 830.  In reaching its decision, the Court held that "[i]t is true that, if a district court has proper jurisdiction when a habeas petition is filed, as is the case here, a subsequent

---

[3] *See* Doc. 1, Pet. for Writ at 4 ("Respondent is the senior Federal officer responsible for the Military Corrections Complex in which [Petitioner] is confined.")  Again, there is no other federal official in the District of Kansas that can now supplant the position that Colonel Horton held as Respondent when she retained custody and control over Petitioner.  Likewise, there are no federal officials in the District of Kansas that could remotely be considered as Respondent with appropriate authority over Petitioner now that he is released from the USDB and living outside the District of Kansas.

transfer of the prisoner will not defeat habeas jurisdiction, *but only 'so long as an appropriate respondent with custody **remain[s]' in the district*." *Id*. at 830 (emphasis supplied) (quoting *Jones v. Cunningham*, 371 U.S. 236, 243-44 (1963); *cf. Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) (reaffirming the limited proposition that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction *who has legal authority to effectuate the prisoner's release*.") (emphasis supplied).

## CONCLUSION

Petitioner's situation is undeniably unique. Indeed, Respondent can find no relevant precedent involving a pardoned individual who continues to challenge his convictions in the manner which Petitioner presently engages. Again, Supreme Court precedent holds that "to seek and accept a pardon implies an admission of guilt." *Healey v. United States*, 186 F.2d 164, 167 (9th Cir. 1950) (citing *Burdick*, 236 U.S. at 94). Thus, to challenge a conviction while simultaneously admitting guilt through the acceptance of a Presidential Pardon is counterintuitive and finds no precedent in § 2241 litigation.

Procedurally, however, if this Court were to conclude that Petitioner can continue to substantively challenge his convictions, there is simply no

immediate custodian within the District of Kansas, to include Colonel Horton, who has the legal authority to effectuate Petitioner's "release" in accordance with 28 U.S.C. § 2241. *Padilla*, 542 U.S. at 441. Consequently, Petitioner must seek habeas relief in a jurisdiction other than the District of Kansas if he in fact has the authority to continue his appeal.

For the foregoing reasons, the Respondent respectfully moves this Court to issue an Order sustaining her motion to dismiss Petitioner's § 2241 motion.

Respectfully submitted,

STEPHEN R. McALLISTER
United States Attorney
District of Kansas

By:   /s/ *Jared S. Maag*

JARED S. MAAG, KS Bar No. 17222
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Ph: 785.295.2850 (Office)
Fax: 785.295.2853
jared.maag@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of December, 2019, I electronically filed the foregoing Reply with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Carrie Elizabeth Parker
Joseph, Hollander & Craft, LLC - Topeka
1508 SW Topeka Blvd.
Topeka, KS 66612
785-234-3272
Fax: 785-234-3610
Email: cparker@josephhollander.com

Christopher Michael Joseph
Joseph, Hollander & Craft, LLC - Topeka
1508 SW Topeka Blvd.
Topeka, KS 66612
785-234-3272
Fax: 785-234-3610
Email: cjoseph@josephhollander.com

David G. Bolgiano
Maher Legal Services PC
7 East Main Street, Number 1053
St. Charles, IL 60174
410-903-2600
Email: airbornerobocop@yahoo.com

Diane L. Bellquist
Joseph, Hollander & Craft, LLC - Topeka
1508 SW Topeka Blvd.
Topeka, KS 66612
785-234-3272
Email: dbellquist@josephhollander.com

John N. Maher
Maher Legal Services, PC
7 East Main Street, Number 1053
St. Charles, IL 60174
708-468-8155
Email: johnmaher@maherlegalservices.com

By:     /s/ *Jared S. Maag*
JARED S. MAAG, KS Bar No. 17222
Assistant United States Attorney