# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**CLINT A. LORANCE,**

    **Petitioner,**

    v.                            CASE NO. 19-3232-JWL

**COMMANDANT,**
**U.S. Disciplinary Barracks,**

    **Respondent.**

## MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2241, challenging Petitioner's conviction by general court-martial. At the time of filing, Petitioner was confined at the United States Disciplinary Barracks in Fort Leavenworth, Kansas. This matter is before the Court on Respondent's Motion to Dismiss (Doc. 10) in light of the Petitioner having received a Presidential Pardon. Petitioner has filed a Response (Doc. 13), and Respondent has filed a Reply (Doc. 14). The Court held a hearing on the motion on January 8, 2020, and took the matter under advisement. The Court, determining that Petitioner's acceptance of the Pardon was an admission of his guilt leaving this matter without a case or controversy, finds that the motion should be granted.

## I. Factual Background

On November 12, 2019, Petitioner filed a Petition for Writ of Habeas Corpus, challenging his conviction by general court-martial. On November 15, 2019, the President of the United States granted Petitioner a full and unconditional Pardon. *See* Doc. 12. Petitioner was released from custody that evening, and is no longer confined at the United States Disciplinary

Barracks in Fort Leavenworth, Kansas. On November 18, 2019, Respondent filed a Motion to Dismiss (Doc. 10), arguing that the Presidential Pardon: (1) divested Respondent of the custody and control over Petitioner; (2) left this Court without jurisdiction over the entire proceeding as Petitioner is no longer residing in the District of Kansas; and (3) left this matter with want of a case-or-controversy given that Petitioner is, for all-intents-and-purposes, not convicted of a federal offense concerning which relief can be granted. (Doc. 10, at 3.)

## II. Standards

Federal courts are courts of limited jurisdiction and, as such, must have a statutory or constitutional basis to exercise jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see United States v. Hardage*, 58 F.3d 569, 574 (10th Cir. 1995) ("Federal courts have limited jurisdiction, and they are not omnipotent. They draw their jurisdiction from the powers specifically granted by Congress, and the Constitution, Article III, Section 2, Clause 1." (internal citations omitted)).

The party who seeks to invoke federal jurisdiction bears the burden of establishing that such jurisdiction is proper. *Montoya*, 296 F.3d at 955; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (finding that because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction"). "Mere conclusory allegations of jurisdiction are not enough." *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citation omitted).

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is

based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal citations omitted). If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the court must accept all such allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). If there is a challenge to the actual facts, the court has discretion to allow affidavits and other documents to resolve disputed facts. *Id*. at 1003.

### III. Analysis

#### A. Effect of Release from Custody on Jurisdiction

A transfer and accompanying custodial change does not defeat initial jurisdiction. *See Pinson v. Berkebile*, 604 F. App'x 649, 652–53 (10th Cir. 2015); *Griffin v. Ebbert*, 751 F.3d 288, 290–91 (10th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change") (citations omitted); *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) (citations omitted) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."); *see also Atkins v. Garcia*, 816 F. Supp. 2d 1108, 1117 (D. Colo. 2011) (finding that jurisdiction attached at the initial filing and was not destroyed by a transfer and stating that "[s]ince Respondent has not sought substitution of party, the U.S. Attorney, on behalf of the BOP, and the currently named Respondent in this action, who agreed to the transfer of Applicant . . . are responsible for implementing the directives in this Order.").

Petitioner was not transferred, but rather was released from custody on November 15, 2019, pursuant to the Presidential Pardon. Section 2241 provides that "[t]he writ of habeas corpus shall not extend to a prisoner" unless the prisoner is "in custody." 28 U.S.C. § 2241(c). Although a petitioner's release from custody does not automatically moot a habeas petition, to

based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal citations omitted). If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the court must accept all such allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). If there is a challenge to the actual facts, the court has discretion to allow affidavits and other documents to resolve disputed facts. *Id*. at 1003.

### III. Analysis

#### A. Effect of Release from Custody on Jurisdiction

A transfer and accompanying custodial change does not defeat initial jurisdiction. *See Pinson v. Berkebile*, 604 F. App'x 649, 652–53 (10th Cir. 2015); *Griffin v. Ebbert*, 751 F.3d 288, 290–91 (10th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change") (citations omitted); *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) (citations omitted) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."); *see also Atkins v. Garcia*, 816 F. Supp. 2d 1108, 1117 (D. Colo. 2011) (finding that jurisdiction attached at the initial filing and was not destroyed by a transfer and stating that "[s]ince Respondent has not sought substitution of party, the U.S. Attorney, on behalf of the BOP, and the currently named Respondent in this action, who agreed to the transfer of Applicant . . . are responsible for implementing the directives in this Order.").

Petitioner was not transferred, but rather was released from custody on November 15, 2019, pursuant to the Presidential Pardon. Section 2241 provides that "[t]he writ of habeas corpus shall not extend to a prisoner" unless the prisoner is "in custody." 28 U.S.C. § 2241(c). Although a petitioner's release from custody does not automatically moot a habeas petition, to

based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal citations omitted). If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the court must accept all such allegations as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). If there is a challenge to the actual facts, the court has discretion to allow affidavits and other documents to resolve disputed facts. *Id*. at 1003.

### III. Analysis

#### A. Effect of Release from Custody on Jurisdiction

A transfer and accompanying custodial change does not defeat initial jurisdiction. *See Pinson v. Berkebile*, 604 F. App'x 649, 652–53 (10th Cir. 2015); *Griffin v. Ebbert*, 751 F.3d 288, 290–91 (10th Cir. 2014) ("Jurisdiction attached on that initial filing for habeas corpus relief, and it was not destroyed by the transfer of petitioner and accompanying custodial change") (citations omitted); *Santillanes v. U.S. Parole Comm'n*, 754 F.2d 887, 888 (10th Cir. 1985) (citations omitted) ("It is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change."); *see also Atkins v. Garcia*, 816 F. Supp. 2d 1108, 1117 (D. Colo. 2011) (finding that jurisdiction attached at the initial filing and was not destroyed by a transfer and stating that "[s]ince Respondent has not sought substitution of party, the U.S. Attorney, on behalf of the BOP, and the currently named Respondent in this action, who agreed to the transfer of Applicant . . . are responsible for implementing the directives in this Order.").

Petitioner was not transferred, but rather was released from custody on November 15, 2019, pursuant to the Presidential Pardon. Section 2241 provides that "[t]he writ of habeas corpus shall not extend to a prisoner" unless the prisoner is "in custody." 28 U.S.C. § 2241(c). Although a petitioner's release from custody does not automatically moot a habeas petition, to

maintain the action a petitioner "must demonstrate that serious collateral consequences of his incarceration exist—i.e., that there is 'some concrete and continuing injury.'" *See Holley v. Andraschko*, 80 F. App'x 614, 615 (10th Cir. 2003) (unpublished) (quoting *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)).

Petitioner argues that he continues to suffer "collateral consequences" associated with his Petition, notably his "dismissal" (a commissioned officer's dishonorable discharge from the Army). Petitioner also argues that the Pardon did not restore his back pay, rank, years of confinement credited toward active duty retirement, or Veterans Administration benefits. *Id*. Petitioner argues that in light of the collateral consequences he still faces, his habeas petition is not moot. Petitioner argues that the Pardon did not erase or expunge his record of conviction, does not imply innocence, and does not restore his right to vote or sit on a jury. (Doc. 13, at 3.)

The Court finds that Petitioner has alleged sufficient collateral consequences. *See Carafas v. LaVallee*, 391 U.S. 234, 237 (1968) (holding that habeas petition is not moot as long as petitioner suffers "collateral consequence"); *Brown v. Resor*, 393 U.S. 10 (1968) (remanding court-martial case in light of *Carafas*); *Brown v. Resor*, 407 F.2d 281, 283 (5th Cir. 1969) (acknowledging on remand that collateral consequences could support consideration of habeas petition arising out of court-martial even after the petitioner was no longer in custody); *McAliley v. Birdsong*, 451 F.2d 1244, 1246 (6th Cir. 1971) (finding that undesirable discharge carries with it serious "collateral consequences" which, under *Carafas*, require holding that case is not moot).

Therefore, without considering the Pardon in this case, Petitioner's "collateral consequences" would prevent his habeas petition from becoming moot upon his release from custody. For example, if Petitioner had been released from custody due to the fact that he had served his sentence, his collateral consequences would provide a continuing case and

controversy. However, the Court must determine the effect of the Pardon in this case.

### B. Acceptance of Presidential Pardon

Article II of the United States Constitution recognizes the power of the President to "grant Reprieves and Pardons for Offenses against the United States, except in Cases of Impeachment." U.S. Const., Art. II, § 2, cl. 1. A presidential pardon must be accepted to be effective, and a party is free to reject it. *Burdick v. United States*, 236 U.S. 79, 94 (1915). In *United States v. Wilson*, the Supreme Court observed:

> A pardon is a deed, to the validity of which, delivery is essential, and delivery is not complete, without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him.

*United States v. Wilson*, 32 U.S. 150, 161 (1833). "The necessity for acceptance in the case of a pardon is usually based on two distinct grounds. First, that the pardon is a deed, and like every deed, must be delivered and accepted to be valid; secondly, that taking advantage of a pardon imputes a confession of a crime, hence to make a pardon binding without an acceptance would be forcing the person to admit guilt though innocent." 3 Constitutional Rights of the Accused 3d § 28.5, n. 41 (3d ed.), Joseph G. Cook (quoting Comment, "The Pardoning Power of the Chief Executive," 6 *Fordham Law Review* 255, 264 (1937)); *see also Marino v. INS*, 537 F.2d 686, 693 (2nd Cir. 1976) (noting serious consequences which would follow if unsolicited amnesty operated as a waiver without acceptance—it would "nail down as final a conviction which had not yet become final" and render the recipient unable to cleanse himself of that stigma no matter how meritorious his appeal might have been—and finding such a result unfair and unwarranted).

Petitioner acknowledges that there was at least an implied acceptance of the Pardon when he walked out of the disciplinary barracks and he neither returned nor has ever evinced a desire to reject the benefits of the Pardon. *See Redd v. State*, 47 S.W. 119, 122 (Ark. 1898)

5

(acceptance of an absolute pardon, which is highly beneficial to him, is presumed in the absence of any proof to the contrary); *see also Fletcher v. Graham*, 192 S.W.3d 350, 362 (Ky. 2006) (finding that "acceptance of a pardon need not be formal, but may be inferred by the circumstances" and that "[t]his position embodies the notion that a pardon may be rejected, but also the common-sense assumption that such rejection will be the rare exception").

Petitioner knowingly and voluntarily accepted the Presidential Pardon in this case. Undisputed documents submitted at oral argument show that before accepting the Pardon, Petitioner asked the President to exercise the authorities vested in him pursuant to Article II of the Constitution and the laws of the United States, including those vested in him as a General Court-Martial Convening Authority pursuant to the Uniform Code of Military Justice, to disapprove the findings and sentence in Petitioner's court-martial. Thus, Petitioner maintained his innocence and referred to his requested action as "different from a Pardon." The Pardon Attorney rejected Petitioner's pleadings and sent them to the Army. Petitioner then began to petition the Army for this relief.

The documents show that Petitioner knew the difference between a pardon and the relief he was seeking. He chose to accept the Pardon by walking out of the disciplinary barrack on November 15, 2019. Petitioner received a letter from the Pardon Attorney on November 19, 2019, documenting that "the President granted [him] a full and unconditional pardon" and enclosing the warrant signifying the President's action. The letter expressly provides that "[a] presidential pardon is a sign of forgiveness. It does not erase or expunge the record of conviction and does not indicate innocence." Petitioner, through his attorney, signed the acknowledgement that he received the warrant of pardon on December 2, 2019. Thereafter, he has never done or said anything to indicate that he wished to reject the Pardon, return to custody and litigate his

innocence.

The Court must now address the consequence of Petitioner's knowing and voluntary acceptance of the Presidential Pardon.[1]

### C. Effect of Acceptance of the Pardon

If the acceptance implies a recognition of guilt, it may constitute a waiver of the right to seek future relief through the judicial process. The Supreme Court in *Burdick* stated that a pardon "carries an imputation of guilt; acceptance a confession of it." *Burdick*, 236 U.S. at 94. Even if this language in *Burdick* is dictum, cases decided after *Burdick* continue to stand for the proposition. *See United States v. Schaffer*, 240 F.3d 35, 38 (D.C. Cir. 2001) ("In fact, acceptance of a pardon may imply a confession of guilt."); *Bjerkan v. United States*, 529 F.2d 125, 128 n. 2 (7th Cir. 1975) ("A pardon does not 'blot out guilt' nor does it restore the offender to a state of innocence in the eye of the law . . . .") (citations omitted). In fact, Petitioner acknowledges that the Pardon did "not erase Lorance's convictions" and that "a presidential pardon is a recognition of guilt" in arguing that he continues to suffer collateral consequences. (Doc. 13, at 1.) The November 19, 2019 letter from the Pardon Attorney also expressly provides that the Pardon "does not indicate innocence."

Several cases dealing with state pardons have held that the acceptance of a pardon amounts to a waiver of an accused's rights on appeal. The court in *Manlove v. State* found that the pardonee could not challenge the assessment of fines and costs that were part of his judgment, because his liability could not be reached except by overturning the judgment as a whole. *Manlove v. State*, 53 N.E. 385, 385 (Ind. 1899). The court held that the pardonee "may

---

[1] Petitioner cites *Robson v. U.S.*, 526 F.2d 1145 (1st Cir. 1975), for the proposition that an unconditional pardon does not moot an action to review the validity of the underlying criminal case. In that case, the defendant was out of custody when he was granted a pardon. Because *Robson* did not address whether the defendant accepted the pardon and what effect such an acceptance would have, the Court finds it unpersuasive.

not so attack the judgment, because, by asking and accepting executive clemency, he said, in effect, that he was rightly convicted. He may not admit guilt to escape imprisonment, and at the same time protest innocence to avoid payment of fine and costs." *Id*.; *see also Odom v. State*, 129 P. 445, 446 (Ok. Ct. App. 1913) (finding on rehearing that a plaintiff in error, by accepting a parole from the Governor, abandons his appeal and waives the right to have it determined); *People v. Marsh*, 84 N.W. 472, 474 (Mich. 1900) ("When Mr. Marsh petitioned the governor for a pardon, and it was issued to him, and he brought it into this court, he, in effect, said he was guilty of the offense charged, that the conviction of the court below ought to stand, and that he waived the bill of exceptions filed by him in this court."); *Goss v. State*, 298 S.W. 585, 586 (Tex. Ct. App. 1927) ("The issuance of the clemency proclamation and the acceptance thereof by the accused precludes the prosecution of an appeal from the judgment."); *Gilmore v. State*, 108 P. 416, 417 (Okla. 1910) ("And where an appeal is taken to this court, and, pending appeal, a pardon is granted and accepted, the appellant thereby waives all his rights upon the appeal, and when brought to the attention of this court the appeal will be dismissed.").

A distinction may be drawn between the ordinary pardon, which is governed by a general rule that a pardon implies guilt and acceptance a confession thereof, and one where it affirmatively appears to have been granted because the grantor was satisfied of the innocence of the accused. In *State v. Jacobson*, the Missouri Supreme Court addressed the issue of whether the facts of that particular case called for the application of the principle that the acceptance of a pardon amounts to a waiver of the defendant's rights on appeal. *State v. Jacobson*, 152 S.W.2d 1061, 1064 (Mo. Sup. Ct. 1941). The Governor granted Jacobson an unconditional pardon while his criminal case was on appeal, and the state filed a motion to dismiss contending that defendant's acceptance of the pardon waived his right to appeal. *Id*. at 1063. In noting the

general principle, the court stated that:

> The most extreme statement of the rule in relation to the effect of a pardon pending appeal is found in 20 R.C.L. § 45, p. 560, as follows: 'Where an appeal is taken and, pending appeal, a pardon is granted and accepted, the appellant thereby waives all his rights upon the appeal, and when brought to the attention of the appellate court the appeal will be dismissed.' This would seem to be direct authority in support of the state's position. But, like each of the foregoing Oklahoma cases, the supporting cases cited in the footnotes disclose that in every instance, save one, the pardon was interposed in the appellate Court by the defendant. . . . The *Goddard* case, supra, is the exception noted, and there the state moved to dismiss the appeal, and was overruled for the reason defendant was not shown to have accepted the terms of a parole granted by the judgment of conviction. . . . These observations are not to be understood as indicating a view that a pardon granted pending an appeal may not be invoked by the state as the foundation of a motion to dismiss in a proper case.

*Id*. at 1063. In discussing the concept of waiver, the court noted that a pardon is an act of grace which carries an imputation of guilt, and stated that:

> [I]t has been held that a party may not accept the benefit based on the legality of a judgment, and thereafter be heard to complain that the judgment is erroneous. He may not so attack the judgment because by asking and accepting executive clemency he said, in effect, that he was rightly convicted. He may not admit guilt to escape imprisonment, and at the same time protest innocence to avoid payment of fine and costs. *Manlove v. State*, 153 Ind. 80, 53 N.E. 385; 2 Ency.Pl. & Pr. 173–182, and cases cited. *But see Eighmy v. People*, 78 N.Y. 330, holding the fact that the accused had received a pardon would not authorize the dismissal of his writ of error because injury may be presumed from the judgment until reversed, as the infamy and discredit to which he is subjected by it will remain.

*Id*. at 1063–1064.[2] The court then addressed the issue of whether or not the facts of that particular case called for the application of the principle that the acceptance of a pardon amounts

---

[2] The Court notes that in the *Eighmy* case, which the court in *Jacobson* cited as conflicting authority, the *Eighmy* court stated that "[t]he plaintiff in error does not interpose the pardon, and whether in case the judgment is affirmed by reason of proceedings on his part he will be deemed to have waived the benefit of it we are not now called upon to determine." *Eighmy v. People*, 78 N.Y. 330, 333 (Ct. App. N.Y. 1879).

to a waiver of the defendant's rights on appeal. *Id*. at 1064.

The court found that because the pardon in that case was based on innocence, "it would be harsh and ironical to imply a confession of guilt from the fact of acceptance of such a pardon." *Id*. The pardon on its face stated that it was granted upon the recommendation of the Board of Probation and Parole, and "because of the fact that [the Governor was] convinced that this man is not guilty." *Id*. The court found that it was not inconsistent for the defendant to accept such a pardon and at the same time deny his guilt. *Id*. Because the pardon was expressly based on the pardonee's innocence, the court found that "a distinction may be drawn between the ordinary pardon, which is governed by the general rules hereinabove noted, and one where it affirmatively appears to have been granted because the Governor was satisfied of the innocence of the accused." *Id*. The court then found that under these circumstances, "an accused is entitled to an opportunity, in the same judicial proceeding, to remove the discredit and stigma flowing from the judgment of conviction, notwithstanding the conviction may no longer be regarded as subsisting." *Id*.

Considering the reasoning in *Jacobson*, our case would fall under the category of an ordinary pardon, which is governed by a general rule that a pardon implies guilt and acceptance a confession thereof, as opposed to the one in *Jacobson* which was expressly granted because the grantor was satisfied of the innocence of the accused. Petitioner in the instant case attempted to go the route of receiving relief from the President based on innocence, but was unsuccessful. Ultimately, he accepted the Pardon that expressly "does not indicate innocence."

### D. Effect of Waiver

The Court must determine whether Petitioner's knowing and voluntary acceptance of the Pardon waives his right to collaterally attack his court-martial sentence through his habeas

petition. Respondent argues that Petitioner's acceptance of the Presidential Pardon moots the merits of this case and warrants dismissal of his habeas petition. Respondent argues that "to challenge a conviction while simultaneously admitting guilt through the acceptance of a Presidential Pardon is counterintuitive and finds no precedent in § 2241 litigation." (Doc. 14, at 8.) The Respondent makes two separate arguments here, that the confession of guilt simply bars Petitioner from proceeding because if guilty he cannot prevail and that the case is moot because there is no case or controversy. Although both points have merit, the latter is dispositive and because it implicates the Court's jurisdiction the Court need not address the former further.

Article III of the Constitution extends the jurisdiction of federal courts only to "live, concrete" cases or controversies. *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot—i.e. where the controversy is no longer live and ongoing." *Cox v. Phelps Dodge Corp.*, 43 F.3d 1345, 1348 (10th Cir. 1994), *superseded by statute on other grounds*. Consequently, "[m]ootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande*, 601 F.3d at 1109 (internal quotations and citations omitted).

In cases dealing with the waiver of appellate rights pursuant to a plea agreement, the argument has been made that a valid waiver of appellate rights deprives the court of constitutional subject matter jurisdiction. *See, e.g., U.S. v. Hahn*, 359 F.3d 1315, 1320 (10th Cir. 2004); *see also U.S. v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001) (stating that the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights). In *Hahn*, the government argued that the entry of a valid plea

agreement, like civil settlements, moots a criminal appeal. *Id*. at 1323. The Tenth Circuit rejected the argument, finding that it had the power to void the plea agreement. *Hahn*, 359 F.3d at 1320. Thus, if the plea agreement were voided, the waiver pursuant to that agreement would not be effective to moot the case. In contrast, this Court does not have the *power* to void the Pardon.

Allowing this case to proceed despite the Pardon could lead to an untenable result. Even if the Court determined that acceptance of the Pardon is not a bar but found that a new trial in the military courts were warranted, it would be unable to grant such relief due to the Pardon.[3] To find that a judicial process may proceed under these circumstances does not reflect the concept of a live case or controversy. Petitioner's acceptance of the Pardon was an admission of his guilt leaving this matter without a case or controversy.

## IV. Conclusion

Petitioner's knowing and voluntary acceptance of the full and unconditional Presidential Pardon waives his right to collaterally attack his conviction through his habeas petition, thus rendering this matter moot and subject to dismissal.[4]

**IT IS THEREFORE ORDERED BY THE COURT** that Respondent's Motion to Dismiss (Doc. 10) is **granted.**

**IT IS FURTHER ORDERED** that the Petition is **dismissed.**

---

[3] Respondent argues that the errors alleged in the habeas petition are not structural, but rather evidentiary, and if there were no pardon, the government would be permitted to re-prosecute.

[4] Petitioner is still able to seek administrative relief through the Army. In fact, the website of the Pardon Attorney directs a pardoned military member to seek relief through the military. *See* https://www.justice.gov/pardon/frequently-asked-questions (last visited January 23, 2020) ("Please be aware that receiving a pardon for a military offense will not change the character of a military discharge. An upgrade or other change to a military discharge may only be accomplished by action of the appropriate military authorities. To apply for a review of a military discharge, you should write to the relevant military branch, at the address listed below . . . .").

**IT IS SO ORDERED**.

**Dated January 24, 2020, in Kansas City, Kansas.**

                                      **S/ John W. Lungstrum**
                                      **JOHN W. LUNGSTRUM**
                                      **UNITED STATES DISTRICT JUDGE**